IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


SUSAN WILLETT,                                    05-CV-596-BR

            Plaintiff,                           OPINION AND ORDER

v.

JOANNE B. BARNHART, Commissioner,
Social Security Administration,

            Defendant.


**DAVID B. LOWRY**
9900 S.W. Greenburg Road
Columbia Business Center, Suite 235
Portland, OR  97223
(503) 245-6309

            Attorney for Plaintiff

**KAREN J. IMMERGUT**
United States Attorney
**NEIL J. EVANS**
Assistant United States Attorney
1000 S.W. Third Avenue
Suite 600
Portland, OR  97204-2902
(503) 727-1053


1 - OPINION AND ORDER

**MICHAEL MCGAUGHRAN**
Office of the General Counsel
**JEFFREY BAIRD**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue
Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2205

        Attorneys for Defendant


**BROWN, Judge.**

    Plaintiff Susan Willett seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's applications for disability insurance benefits (DIB) under Title II of the Social Security Act and Supplemental Security Income disability benefits (SSI) under Title XVI of the Social Security Act.

    This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Following a thorough and careful review of the record, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.


## ADMINISTRATIVE HISTORY

    Plaintiff filed her applications for SSI and DIB on April 13, 1996, and alleged a disability onset date of April 15, 1995.  The SSA employee who assisted Plaintiff with her application determined Plaintiff's work activity after April 15,

2 - OPINION AND ORDER

1990, was not substantial gainful activity, and, therefore, an onset date of April 15, 1990, was appropriate.  The applications were denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on September 14, 1998.  At the hearing, Plaintiff was represented by an attorney.  Plaintiff, two lay witnesses, and a vocational expert (VE) testified.

The ALJ issued a decision on December 22, 1998, in which he found Plaintiff was not entitled to benefits.  That decision became the final decision of the Commissioner on June 15, 2000, when the Appeals Council denied Plaintiff's request for review.

On August 11, 2000, Plaintiff filed a Complaint in this Court in which she sought judicial review of the Commissioner's decision.  On April 16, 2001, the Commissioner filed an unopposed Motion to Remand this matter for further proceedings before the ALJ.  On April 18, the Court remanded this matter to the Commissioner for further administrative proceedings.

On November 29, 2004, an ALJ held a hearing after remand at which Plaintiff, a lay witness, a medical expert, and a VE testified.  The ALJ issued a decision on February 16, 2005, in which he found Plaintiff was not entitled to benefits.  That decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.

## BACKGROUND

Plaintiff was born on May 20, 1959, and was 45 years old at the time of the second hearing.  Tr. 45, 246.[1]  She completed high-school.  Tr. 13.  Plaintiff has past relevant work experience as a bookkeeper and accounts-receivable clerk. Tr. 13.

Plaintiff alleges disability due to fibromyalgia, digestive problems, cognitive problems, and lupus.  Tr. 12, 246-49.

The ALJ acknowledged Plaintiff has the severe impairments of fibromyalgia, fatigue, depression, headaches, lupus/discoid type, occasional panic attacks, adjustment disorder with mixes of anxiety and depressed mood, irritable bowel syndrome, and methamphetamine and alcohol abuse (in remission per Plaintiff), but the ALJ denied benefits on the ground that Plaintiff retains the residual functional capacity (RFC) to perform a modified range of light exertion work at jobs that exist in a significant number in the national economy such as small-products assembler, packaging/filling operator, and cashier.

Except when noted below, Plaintiff does not challenge the ALJ's summary of the medical evidence.  Plaintiff, however, contends the ALJ erred when he (1) improperly rejected

---

[1] Citations to the official transcript of record filed with the Commissioner's Answer on November 22, 2004, are referred to as "Tr."

Plaintiff's testimony; (2) improperly rejected the testimony of three lay witnesses; (3) improperly rejected the opinion of C.F. Kenyon, M.D., treating physician; (4) improperly evaluated Plaintiff's RFC; and (5) posed an incomplete hypothetical to the VE.

After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence. *See* Tr. 17-18.


### **STANDARDS**

The initial burden of proof rests on the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.


## DISABILITY ANALYSIS

The Commissioner has developed a five-step sequential process for determining whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). *See also* 20 C.F.R. §§ 404.1520, 416.920.  There is no dispute in this case regarding the first three steps.

For purposes of Step Four, the Commissioner must determine whether the claimant retains the residual functional capacity (RFC) to perform work he has done in the past. *Yuckert*, 482 U.S. at 141-42.  *See also* 20 C.F.R. §§ 404.1560(a)(3), 416.920(e). The claimant's RFC is an assessment of the sustained, work-related activities the claimant still can do on a regular and continuing basis despite the limitations imposed by his impairments.  20 C.F.R. §§ 404.1545(a), 416.945(a).  *See also*

6 - OPINION AND ORDER

Social Security Ruling (SSR) 96-8p.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. *Yuckert*, 482 U.S. at 141-42. *See also* 20 C.F.R. §§ 404.1520(e),(f), 416.920(e),(f). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do. *Yuckert*, 482 U.S. at 141-42. *See also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.920(f)(1).


## DISCUSSION

As noted, Plaintiff contends the ALJ erred when he (1) improperly rejected Plaintiff's testimony; (2) improperly rejected the testimony of three lay witnesses; (3) improperly rejected the opinion of C.F. Kenyon, M.D., treating physician; (4) improperly evaluated Plaintiff's RFC; and (5) posed an incomplete hypothetical to the VE.

**I.    Properly Rejected Plaintiff's Testimony.**

Plaintiff alleges the ALJ erred when he failed to give clear and convincing reasons for rejecting Plaintiff's testimony.

"If the ALJ finds that the claimant's testimony as to the severity of [the claimant's] pain and impairments is unreliable, the ALJ must make a credibility determination with findings

sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).  When weighing the claimant's credibility, the ALJ may consider "inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas,* 278 F.3d at 958.

     The ALJ identified inconsistencies between Plaintiff's testimony and the medical record and, as a result, found Plaintiff's testimony regarding her ability to work was not credible.  Tr. 20-21.

     For example, the ALJ noted at the hearing that Plaintiff testified she is unable to work due to panic attacks, depression, headaches, fatigue, sleep problems, irritable bowel syndrome, and pain.  As far back as December 6, 1990, however, John B. Chester, M.D., treating orthopedic surgeon, questioned whether

>          [Plaintiff has] other conditions which have led to
>          symptom migration and amplification over time.  In
>          my view, it is more probable that Plaintiff has
>          become involved in a conversion process (hysteria)
>          than it is likely that she actually has something
>          such as multiple sclerosis . . . which might lead

to spreading and unusual patters of symptoms.

Tr. 396.  Dr. Chester opined:

> [I]t is in all parties best interest to bring
> medical investigations to a close at this time
> . . . .[T]he persisting symptoms, the multiple
> physicians involved, and the underlying
> psychodynamics are all creating a progressively
> involved illness in this person far and beyond
> what might have occurred with a simple strain
> syndrome.

Tr. 396.

In addition, Bill L. Hennings, Ph.D., examining psychologist opined Plaintiff "may feel that she does not get enough consideration from her family and may engage in some passive-aggressive manipulation."  Tr. 380-81.

In connection with Plaintiff's Worker's Compensation claim relating to her stress condition, Arlen Quan, Ph.D, P.C., examining psychiatrist noted his "treatment of choice" for Plaintiff would be psychiatric, but Plaintiff "is quite upset at anything that might be psychological or psychiatric."  Tr. 401. Dr. Quan reported, "There are very obvious secondary gain possibilities including chiropractic care, attention from parents and others important to her . . . .  At this time[, however] her likelihood to participate in psychiatric treatment is minimal." Tr. 403.

The ALJ also noted the record is replete with references to Plaintiff's extensive use of narcotics, their effects, and Plaintiff's refusal to consider other methods of treatment.

9 - OPINION AND ORDER

For example, between October 1994 and April 1995, Plaintiff increased her intake of Percodan from three per day to six per day.     Tr. 567, 573.  On April 4, 1995, Dr. Kenyon noted Plaintiff wished to increase her pain medication beyond six Percodans per day.  Dr. Kenyon reported, "I could not prescribe more than six Percodans daily or more than one Xanax daily. [Plaintiff] was very resistant to my firmness.  I really feel we need to stop at this level."  Tr. 567.  On April 10, 1995, Dr. Kenyon noted Plaintiff "really wants more pain medication and wants me to prescribe oxytocin."  Tr. 567.  On April 14, 1995, Dr. Kenyon had a 40-minute telephone discussion with Plaintiff "concerning the need to decrease her medication."  Tr. 567.  On April 25, 1995, Dr. Kenyon told Plaintiff that her Percodan prescription "must last two weeks," and he would not refill it any earlier.  Tr. 566.  On May 8, 1995, Dr. Kenyon "strong[ly] recommend[ed] that [Plaintiff] be checked into a drug rehab unit as a patient to treat her drug abuse."  Tr. 566.  Dr. Kenyon noted Plaintiff "recognizes that she has a drug abuse problem . . . . , however, [he] agreed to place her on MS Contin."  Plaintiff "agreed to slowly decrease the Xanax and not to take any Percodan tabs."  Tr. 566.  On May 10, 1995, Dr. Kenyon reported Plaintiff was "upset at [him]."  Tr. 561.  Plaintiff wanted "more Percocets than six/day."  Tr. 561.  Dr. Kenyon had a 40-minute discussion with Plaintiff "concerning her drug abuse" and again recommended

10 - OPINION AND ORDER

a drug rehabilitation center." Tr. 561.

On September 5, 1995, Plaintiff fractured her toe, increased her pain medication, and took her entire daily dose of pain medication by noon. Tr. 560. On September 14, 1995, Dr. Kenyon advised Plaintiff she was using "more MS Contin than was indicated. #100 should be lasting 3 weeks it seems." Tr. 558. On October 28, 1995, Dr. Kenyon notes he had a "counseling/discussion [with Plaintiff] concerning morphine/Librium use." Tr. 552. On October 30, 1995, Dr. Kenyon noted Plaintiff "in no way wants any kind of inpatient pain program where she would immediately be taken off her medication . . . . She feels that she can decrease her MS Contin to a reasonable level." Tr. 552.

On November 9, 1995, Peter Kosek, M.D., examined Plaintiff on referral to the Oregon Health Sciences University Pain Clinic. Dr. Kosek noted Plaintiff admitted to "daily use of methamphetamines." Tr. 447. Dr. Kenyon reported Plaintiff "is taking prescription medication and is at high abuse potential. She also used methamphetamines as recently as this morning." Tr. 448. Dr. Kosek opined, "It suggests the patient is probably dependent and/or addicted to prescription medications and illegal substances. . . . [I]t presents a very worrisome picture of a complex substance abuse [*sic*]." Tr. 448. Dr. Kosek further noted Plaintiff "has been taking MS Contin on a prn basis, which

11 - OPINION AND ORDER

contradicts the pharmacokinetics of this particular medication, which is designed to be a slow release morphine." Tr. 448. Dr. Kosek stated, "General use of opioids for benign pain is controversial at best, and I would not recommend continuing the patient on chronic morphine therapy." Tr. 448. Finally, Dr. Kosek noted Plaintiff "has been taking benzodiazepines [Librium] for quite some time to manage an anxiety disorder. However, they certainly would not be indicated for chronic pain state management." Tr. 448.

Dr. Kosek informed Dr. Kenyon of Plaintiff's reported methamphetamine use. On November 15, 1995, Dr. Kenyon reported, "A physician at OHSU called and indicated [Plaintiff] has been taking crank. I called the patient and confronted her with this fact and she did admit to using crank on several occasions . . . and indicated an addiction." Tr. 548. Dr. Kenyon again recommended a drug-treatment program. Plaintiff, however, "insist[ed] she is not addicted to anything and that she ha[d] no intentions of using crank again . . . . We could maintain her MS Contin 30 mg tid [*sic*] on a long term basis. No more than that however." Tr. 548.

On May 9, 1996, Dr. Kenyon "once again . . . approached [Plaintiff] with the fact that depression is a problem. The medications are certainly contributing to this and once again this was discussed . . . . She feels . . . her medication is

12 - OPINION AND ORDER

untouchable.  She just wants to feel better . . . ."  Tr. 533.

On May 28, 1996, Jackie Kern, M.S.W., L.C.S., saw Plaintiff for marital counseling.  During the session, Plaintiff "denie[d] over use [of drugs], but admitted others have been concerned that she abuses pain meds and recreational drugs."  Tr. 478.

On July 20, 1996, Keith Cunningham, M.D., examined Plaintiff.  Plaintiff admitted she "had been taking intravenous amphetamines . . . .  [Plaintiff] did not wish to expound or provide further detail on her intravenous drug use in regard to her chronic pain syndrome or which came first."  Tr. 495. Dr. Cunningham diagnosed Plaintiff with "chronic pain syndrome with no evidence of musculoskeletal or neurological abnormality," depression, or anxiety.  Tr. 498.  Dr. Cunningham also noted Plaintiff's "[s]ubjective complaints far outweigh objective findings by today's exam."  Tr. 498.  Dr. Cunningham noted after Plaintiff's exam, she "was found in the next door exam room taking notes and 'obtaining her own dictation notes.' [Plaintiff] was later escorted out into the waiting area."  Tr. 498.

On September 25, 1996, Dr. Kenyon met with Plaintiff's divorce attorney and reported:

> I was right up front with Mr. Brand and indicated that her present use of MS-Contin were [*sic*] definitely depressing her mental status to a significant degree.  Her ability to take care of her children and other responsibilities would certainly be impaired at the present level of medication. . . .  I indicated that a rehab program . . . was indicated . . . .  She has

13 - OPINION AND ORDER

> always held steadfast to the idea that she could
> get off of any medication if it was absolutely
> needed.  During that period of time since November
> [1995] her MS-Contin and Librium dosage was
> escalated through various manipulations on her
> part.  Presently she need to have her medications
> at the following level:  MS-Contin 30 mg, Librium
> 10 mg.  She most likely could function in a proper
> manner if her medicines were at that level.

Tr. 544.

Although Dr. Kenyon reported Plaintiff "continues to decrease her MS Contin and Librium," he noted Plaintiff was "taking 100 mg daily of MS Contin" in October, 1996.  Tr. 544.

On December 14, 1996, Kelly D. Krohn, M.D., F.A.C.R., examined Plaintiff and opined Plaintiff's "use of narcotics was out of proportion to her physical exam which was basically unremarkable other than fibromyalgia tender points."  Tr. 536. Dr. Krohn also reported Plaintiff's narcotic use had "accelerated to an unacceptable level."  Tr. 536.  In addition, Dr. Krohn noted "[Plaintiff] has a substantial history of depression. . . . [S]he is very adamant that she does not want to be seen by a psychologist or psychiatrist at this time."  Tr. 534.

On August 25, 1998, Dr. Kenyon reported the MS Contin Plaintiff takes "causes drowsiness/lack of focus and the Flexeril also causes drowsiness and lack of focus . . . .  Therefore, under these conditions, I cannot see her working at any job for any number of useful hours."  Tr. 731.  On September 2, 1998, Dr. Kenyon opined Plaintiff's headaches were "possibly:  rebound

14 - OPINION AND ORDER

headaches from MS Contin usage." Tr. 692.  On September 26,
2002, Dr. Kenyon contacted Safeway pharmacy, and they informed
him that they "double back count medications, particularly
narcotics before dispensing them and it is highly unlikely that
they would have four counts that are so off so significantly as
[Plaintiff] identifies.  [Plaintiff] indicates that she had been
off as much as 14 pills at a time." Tr. 218.

On October 9, 2002, Merlynn Peasley, N.P., noted Plaintiff's
mother called Dr. Kenyon's office to report that Plaintiff was
experiencing "'withdrawal from oxycontin' due to running out of
meds early." Tr. 217.  Nurse Peasley reported Plaintiff
"believes the pharmacy continues to short her every month for the
past 4 mnths [*sic*]," and Plaintiff "is furious that early refills
are denied." Tr. 217.  Nurse Peasley informed Plaintiff's mother
that "they explained policy of no early refills on 9/13 visit."
Tr. 217.

On October 17, 2002, a physician at the West Hills Medical
Center treated Plaintiff and noted:

> The most significant problem, once again, appears
> to be patient's home situation . . . .  Her family
> apparently is convinced that all of her symptoms
> are fibromyalgia in origin.  She is now having all
> of her MS contin bubble-wrapped by the pharmacy so
> that she and them [*sic*] may double-check the count
> on them so that there is no dispute with her for
> early refills.  Indicates Dr. Kenyon previously
> gave her MS Contin every month "I am unwilling to
> continue that . . . .  I have counseled her
> strongly on regaining control of her life through
> changes in her lifestyle and personal management

> rather than medication management.  Will not start
> her on any new medications at this time.  I have
> insisted that if we are continue [*sic*] to refill
> her pain medication that she and I both must sign
> a pain contract that assures her that I will
> refill her pain medication when it is due and that
> assures me that she will not be asking for early
> refills.

Tr. 216.

The ALJ found Plaintiff to be credible generally "to the extent she does have medically determinable impairments that do cause vocationally relevant limitations." Tr. 15.  The ALJ, however, noted Plaintiff's inconsistent information on her use of narcotics, refusal to participate in psychiatric or psychological methods of treatment, and refusal to follow through with other methods of managing her pain.  The ALJ also found Plaintiff's statements regarding "the intensity, persistence and limiting effects of these symptoms are disproportionate and not supported by the medical record."  Tr. 16.

On this record, the Court finds the ALJ adequately explained his reasons for finding Plaintiff not credible as to the intensity, persistence, and limiting effects of her conditions. The Court, therefore, concludes the ALJ did not err because he provided a legally sufficient basis supported by the record for rejecting portions of Plaintiff's testimony.

**II.  The ALJ Properly Rejected the Testimony of Lay Witnesses.**

Plaintiff contends the ALJ improperly rejected the testimony of Gary Field, her boyfriend; the witness statement of Patsy

16 - OPINION AND ORDER

Trivelpiece, Plaintiff's mother; and the witness statement of
Christina Kindel, Plaintiff's daughter, all of whom testified
Plaintiff had marked limitations in activities of daily living
due to fatigue and pain.

To reject lay-witness testimony, the ALJ must give reasons
that are germane to the witness. *Nguyen v. Chater,* 100 F.3d
1462, 1467 (9th Cir. 1996). *See also Regennitter v. Comm'r,* 166
F.3d 1294, 1298 (9th Cir. 1999).

The ALJ considered the lay-witness statements and testimony,
but he did not fully credit the witnesses' assessments regarding
the extent of Plaintiff's pain and fatigue because "none of the
witnesses are trained to critically evaluate whether the
claimants complaints are exaggerated or inconsistent with the
medical evidence." Tr. 16.  In addition, the record contains
reference to the likelihood that Plaintiff "may engage in some
passive-aggressive manipulation" with her family because "she
does not get enough consideration" from them.  Tr. 380-81.
Finally, as noted, the ALJ properly found Plaintiff not credible
with respect to the degree and level of her pain and fatigue
related to fibromyalgia.  The ALJ, therefore, found the
assessments by Plaintiff's family, which necessarily rely on
Plaintiff's presentation of fatigue and pain, were not reliable.

Accordingly, the Court concludes the ALJ did not err when he
found the testimony and statements of these lay witnesses not

17 - OPINION AND ORDER

credible because he gave reasons germane to the lay witnesses and provided a legally sufficient basis supported by the record for doing so.

**III. The ALJ Properly Rejected the Opinion of Dr. Kenyon.**

It is well-settled that "greater weight is afforded to the opinion of a treating physician than to that of [a] non-treating physician, because the treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Ramirez v. Shalala*, 8 F.3d 1449, 1453 (9th Cir. 1993)(internal quotations omitted). A treating physician's opinion is controlling when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent" with other evidence of record. 20 C.F.R. § 404.1527(d)(2).

When a treating physician's opinion is not entitled to controlling weight, the ALJ must give "specific, legitimate reasons" for rejecting it if that opinion conflicts with another physician's opinion or with evidence in the record. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). When the opinion of the treating physician or other medical expert is uncontroverted, the ALJ must give "clear and convincing reasons" before rejecting such an opinion. *Id*. *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995). The ALJ also must give "specific, legitimate reasons" for rejecting the opinion of an examining

18 - OPINION AND ORDER

physician when that opinion conflicts with another physician's opinion or with evidence in the record. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

On June 11, 1996, Dr. Kenyon opined Plaintiff was capable of sedentary work, but she could not work full time. Tr 546. On May 26, 1996, Dr. Kenyon opined Plaintiff could not do any "work related activities" and noted he had "never had a patient become so incapable of performing her duties as a wife & a mother as a result of the fibromyalgia disease & its treatment. She is unable to handle any job responsibilities under the present circumstances." Tr. 545. Although her lab tests were normal, Dr. Kenyon noted when he last saw her on December 22, 1997, that Plaintiff suffered from fatigue, depression, headaches, and fibromyalgia when he last saw her on April 27, 1997. Tr. 511. Dr. Kenyon opined Plaintiff was incapable of performing even a low-stress job because she had not been able to perform a low-stress job in the past. Tr. 511. Dr. Kenyon also reported Plaintiff could walk one block without rest; sit or stand 30 minutes at a time; and limit standing, walking, and sitting to two hours. Tr. 512.

The ALJ did not fully adopt Dr. Kenyon's reported limitations as to Plaintiff's inability to do any kind of work. The ALJ pointed out that Dr. Kenyon relied "quite heavily" on Plaintiff's subjective reports of symptoms. In fact, as noted,

Dr. Kenyon reported all of Plaintiff's lab tests had been normal.
Tr. 17.  This Court has found, the ALJ provided sufficient
reasons for finding Plaintiff's testimony regarding the extent of
her pain and fatigue to be not credible.  Accordingly, the Court
concludes the ALJ did not err when he rejected those findings of
Dr. Kenyon that relied on Plaintiff's assertions of pain and
fatigue.

     Dr. Kenyon's opinion also is contradicted by the opinions of
other treating and examining physicians.  On September 27, 1996,
David Sweet, Ph.D., reported the "level of depression and anxiety
that [Plaintiff] is experiencing are not significant enough to
prevent her from working competitively."  Tr. 501.  On July 20,
1997, Dr. Cunningham could noted only two trigger points (out of
a possible 18) for fibromyalgia and did not find any evidence of
"joint abnormalities, . . . symmetrical abnormalities, or bony
abnormalities."  Tr. 498.  On December 14, 1996, Dr. Krohn
reported Plaintiff's "physical exam . . . was basically
unremarkable other than fibromyalgia tender points."  Tr. 536.
In addition, Dr. Kosak noted the use of MS Contin prn basis as
prescribed by Dr. Kenyon "contradicts the pharmacokinetics of
[that] particular medication."  Tr. 448.  Dr. Kosak noted he
would not recommend continuing Plaintiff on "chronic morphine
therapy."  Tr. 448.

     Finally, the record indicates Plaintiff was not fully

20 - OPINION AND ORDER

forthcoming with Dr. Kenyon a number of times about her use of
methamphetamines, her continued use of high levels of MS Contin
and Librium, and her total refusal to attempt other methods of
treatment.

On this record, therefore, the Court concludes the ALJ did
not err when he rejected Dr. Kenyon's opinion because the ALJ
provided legally sufficient reasons supported by the record for
doing so.

**IV.  The ALJ's RFC Assessment and Step-Five Conclusions.**

Plaintiff contends the ALJ erred by omitting from his RFC
assessment and his hypothetical to the VE the extent of
Plaintiff's limitations of fatigue and pain identified by
Dr. Kenyon, Plaintiff, and the lay witnesses.  As noted, however,
the Court has found the ALJ did not err when he discounted Dr.
Kenyon's opinion, Plaintiff's testimony, and the testimony and
statements of the lay witnesses because the ALJ provided legally
sufficient reasons supported by the record for doing so.

Accordingly, the Court concludes the ALJ did not err in his
RFC assessment of Plaintiff nor in his hypothetical to the VE,
both of which included consideration of Plaintiff's relevant and
credible limitations.


<u>**CONCLUSION**</u>

For these reasons, the Court **AFFIRMS** the decision of the

21 - OPINION AND ORDER

Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 30th day of March, 2006.

/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge

22 - OPINION AND ORDER